Good morning your honors. May it please court and counsel my name is Maureen Rosette the attorney for Ralph Davis the appellant in this matter. What we have here is a very complex factual case as far as Mr. Davis goes. It doesn't he has various physical problems but the psychological impairments are what are mainly are what at issue are at issue here. He had he underwent seven evaluations, psychological evaluations in the course of four years. Basically every doctor that evaluated him treated him and saw him felt that he was exaggerating his symptoms or malingering but despite that fact Dr. Coole's testified at the hearing in April of 2007 that malingering is considered a medical diagnosis. So this you would think that when you malinger you're that fact Dr. Coole's, Dr. Ridgway, Dr. Arnold they all felt that he still had underlying impairments of a personality disorder as well as a pain that some sort of pain disorder or somatoform disorder despite the fact that he was malingering. Well why isn't it the situation that you focus a lot on Dr. Coole's and the ALJ didn't properly discount Dr. Coole. Well Dr. Coole was not the treating physician right? Correct. And his treating physician actually over time altered, I can't remember if it was a he or she, he altered his view of your client right? He did. And so it just seems like this case comes down to a comparison of the doctors who say Mr. Davis is employable and those who say he might not be. Why was it error for the ALJ to conclude that he was employable when substantial evidence supports it? You know that's. Okay so Dr. Arnold did treat Mr. Davis in 2004 and 2005. He had 14 sessions with Mr. Davis and evaluated him once in that 2004. But the treating physicians are always treated a little bit differently than the other ones right? At that time Dr. Arnold was not treating him in 2007. When he saw him in 2007 he was not treating him. He went, he saw Dr. Davis for a GAU evaluation at the time and he just barely mentioned that he had, that he had had, Mr. Davis had had sessions in 2006 with him but he didn't really. Okay so is the point of this he's not a treating physician or what is the point of what you're saying? The point is that he wasn't a treating physician at the time but even so, even though he changed, even though he changed his position to, he still said he was malingering but he still gave him, when you look at the form that he completed of Mr. Davis, he still felt that he had several moderate work-related limitations which the ALJ never included in the hypothetical questions to the vocational expert. Can I ask you about that hypothetical question because an initial hypothetical was asked and then Davis's counsel revises that and it seems to me that part of this may rise and fall on whether that revision fairly included, you know, not only maybe some minimum of Dr. Kuhl but also Dr. Arnold and whether in fact there was not some inconsistency and therefore what he ultimately gave the opinion on included both Kuhl and Arnold which means he, he couldn't work. He didn't include Dr. Kuhl and Dr. Arnold in both, he said he did but what he did was he said that what his hypothetical actually was was that Mr. Davis would have limitations in or he could do simple work-related tasks, he could, he would have difficulties with working with the public, he'd have difficulties working with supervisors but or he'd have, he could have superficial contact with supervisors but Dr. Arnold also said he would have difficulties with maintaining his behavior in a work setting as well as limitations and this was the revised version that he would not be able to respond appropriately to changes in the ARR to, I don't know what the exact terminology is but that he would moderate limitations in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting which was never included in the hypothetical questions the vocational expert by the ALJ but when Mr. Davis's attorney added in Dr. Kuhl's limitations after Dr. Kuhl's reviewed the record, he, the AL, or the vocational expert said Mr. Davis was not going to be able to work with those limitations. Those limitations, let me just ask you, as I read it, those limitations actually were not really inconsistent with Dr. Arnold 2007, they're, they're more or less the same aren't they? They were very, they were pretty close except that, they were pretty close yeah but Dr. Arnold was given him more moderate limitations whereas Dr. Kuhl's was indicating that he would have marked work-related limitations and remember Dr. Kuhl's had everybody's information in that 2007 evaluation completed by Dr. Arnold, he never reviewed any of the records, he never even went back to his records where he, he never put any of those in. Dr. Ridgway did, Dr. Kuhl's looked at all the records and they both outlined them and even so Dr. Ridgway said you know that he's got these, he's got, he is malingering, yes he is malingering but that, and Dr. Kuhl said but this is a medical diagnosis and so despite that fact Dr. Kuhl said here's how I had to break it out, I had to break it out and put that aside and his focus was on whether he could perform any competitive employment because he does have a in fact a pretty severe personality disorder as well as a pain disorder on top of malingering, he embellishes. Looking at Dr. Kuhl when he talks about markedly limited, he talks he couldn't really get along with co-workers, couldn't accept instructions etc. and that's almost identical to what Dr. Arnold said in 2007, ability to understand, ability to you know get along with co-workers and understand instructions. So it seems like they're actually saying the same thing they just use different what would you call it monikers. One says markedly limited and here's what you can't do and the other one says you can't definitely can't do these things but I call it moderate. So does their label matter or is what matters what the vocational expert ultimately concludes from the substance of those? I think we didn't even get to the step fifth step in this situation because the ALJ never included all of Dr. Arnold's limitations, that's the point I'm trying to make is that we never got to step five because the question was never asked, the question was asked about Dr. Kuhl's but the question wasn't asked about Dr. Arnold's limitations at the hearing level where if you included those two other moderate limitations that he gave that that Dr. Arnold gave at the same time in 2007 then I'm I've been doing this a long time most vocational experts would say that you don't you are not able you're not gonna be able to work with those limitations but the question was never asked so we never got to step five. So if you what do you want us to do I mean ideally ideally I'd want you to remand it so we can go back and look at what the vocational expert would say with regard to these with Dr. Arnold's limitations because it was never asked and if you're that was never asked of the ALJ or of the vocational expert to determine whether he could do the job his past work or other work in the national economy. So that's what I would ask and I will stop right there thank you. Let me please the court your honors Willie Lee for the Commissioner of Social Security. What benefits are at stake here? What's been waived based on prior claims and date of past insurance coverage? What are we talking about here? We're talking about title 16 supplemental security income it's not based on your work history and your contributions to the Social Security retirement system. That in the past and his insurance because title 2 which is the disability slash retirement system his insurance expired for his eligibility for that back in 2002 I believe and so we also the agency had also denied his claim past that point so that title 2 is no longer on the table it's only title 16 supplemental security income. Well if Dr. Cole's testimony had been given credit it's Mr. Davis entitled to benefits? What aspect of yes I believe it would because Dr. Coole's testified that he basically couldn't work because he didn't want to work but that leads to my initial point your honors is that malingering is a diagnosis because a doctor has to identify it but Social Identifying disability based on a medically determinable impairment this is not an impairment it's simply a behavior and it's identified and defined in the DSM the diagnostic statistical manual published by the American Psychiatric Association that's in the brief and it says clearly that in order to reach a identification or diagnosis of malingering the claimant or the patient has to have an intentional production of false symptoms or allegations in order to achieve an external incentive and otherwise it might be called something else factitious disorder conversion disorder those are mental impairments in which maybe the patient is not volitionally or intentionally misrepresenting or making inconsistent statements but it's not for an external incentive anyway they just can't help it they lie here it's been his symptoms in order to get something and it can work what what is that where does that get you well it goes back to the basic disability analysis what do your medically determinable impairments how do they limit you and on top of that how much malingering is there now we're trying to separate out the malingering and getting you back to what's what's left the medically determinable impairment and you on that point before you yes malingering it seemed that the ALJ made some kind of finding or to the effect that that dr. Coole's apparently accepted these exaggerations as part of his analysis and when you actually then go read dr. Coole's he says well he actually specifically addresses this and then he says in spite of the attempts at malingering in other words he puts it right up on the table at core this person can't work so right there it seems that the ALJ when I say mischaracterizer was just wrong about what dr. Coole's did would you address that please yes that is what dr. Coole's testified I think whether or not it was in this characterization I think the analysis would be that the analysis still the same how do we how do we separate where malingering started and the impairments began but if the ALJ is just flat wrong in his assumption that dr. Coole's accepted this malingering when we know he didn't based on his testimony doesn't that already skew the whole lineup I think it was just poor wording I mean when an ALJ says you've accepted what this person has alleged it can come across as saying you've just merely accepted the testimony without really weighing the medical but I think in the conclusion is the same regardless of the analysis is that the ALJ disagreed with how much dr. Coole's factored in the malingering and I mean I would note again that dr. Coole's even though that's what he concluded he also qualified it by saying that it was difficult to for himself to determine at what point malingering started and where his impairments stopped so that's basically true of every doctor in this case they said because of the enormous malingering here I can't tell what he can really do but here's my best guess no tests were were were considered valid because you know they were his exaggeration so what's your best argument why the ALJ should be affirmed dr. Arnold found that at most in 2007 that and that mr. Davis had moderate limitations at most despite his malingering and you know he wasn't I can't recall if he was treating him at the time but his treating history lends weight to his opinion and so based on I mean because no limitations is he talking about dr. Arnold in 2007 the limitations were based on following instructions learning tasks performing tasks interacting with the public and these were all factored into the RFC the final the ALJ said that he had only that Arnold opined he had only mild to moderate functional limitations and he didn't think that these impairments would last three months and what you're talking about is a underlying psychological problem that's permanent right and that regardless they were weighed into the final RFC I mean he found that the ALJ found ultimately that he was limited to short simple instructions no public interaction no superficial contact with co-workers and supervisors I mean those are not those significant restrictions in perhaps but the vocational expert testified that even with those limitations he could go back to his work at step four and I think ultimately this really is just a case where you had various doctors some in one camp saying one thing from the other saying the other the ALJ had to so I mean ultimately the plaintiff has the burden to show exactly what his limitations are based on the evidence because no doctor could find that could nail that down what you're left with is just you know evidence going every which way and the ALJ is left to to resolve it okay and that's the question thank you the rest of my time thank you first off your honors um mr. Lee was miscorrect in stating that this was just a title 16 this is actually a title 2 and title 16 claim at the time they in fact the ALJ decision does in fact incorporate that he alleged disability as of March 14th 2000 and his date last insured was March 31st 2002 so it does incorporate both titles 2 and title 16 into this also mr. Lee indicates at the very end of his argument that the ALJ's job is to pull out all of the evidence basically and but but he also is that's the main reason you have a medical expert at a hearing is to determine what exactly is going on with a person when you look at all of these complex issues that are going on with a person he had dr. Coole's there to do that for him and that's the reason he's not the ALJ is not a psychologist the ALJ is you know he doesn't know all the ins and outs of psychology just like dr. Coole's and that's the reason you have a psychologist or a medical expert at hearings is to get the in to in a yeah my client does exaggerate his symptoms yes but despite that he's got he's got a personality disorder and he's got a he's also got a pain disorder and dr. Coole's very clearly laid that out he dealt with the malingering he dealt with all that and that's the main reason you have a medical expert at the hearing so that's my argument thank you
judges: Schroeder, McKeown, Callahan